UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

| | |
|---|---|
| STEVEN DAVIDSON, on behalf of himself and others similarly situated, | Civil Action No.: |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| AMERICAN CONSUMER HOME SHOWS LLC and CRAIG GITLITZ, | **JURY TRIAL REQUESTED** |
| Defendants. | |

-----------------------------------------------------------------------X

Plaintiff, Steven Davidson ("Plaintiff"), on behalf of himself and others similarly situated, by his attorneys, Law Offices of Yale Pollack, P.C., as and for his Complaint against Defendants, American Consumer Home Shows LLC and Craig Gitlitz (collectively "Defendants"), alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff worked as a trade show sales representative for Defendants from 2004 until his unlawful termination on February 14, 2019. As part of his employment, Plaintiff secured exhibitors and vendors to rent booths in trade show spaces rented out by Defendants. During the entirety of his employment, Plaintiff was misclassified in that he was only paid commissions for the work he performed for Defendants.

2. Based on Plaintiff's advanced age and after his wife was diagnosed with cancer, Defendants terminated Plaintiff's employment. This termination occurred within months of Plaintiff, through counsel, filing a complaint of discrimination and misclassification against Defendant. At no time prior to or after learning of his wife's diagnosis did Defendants ever advise Plaintiff of his right to take leave to care for his spouse.

3. Plaintiff brings this action, on behalf of himself and other current and former employees similarly situated, to remedy violations of the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et seq.* (the "FLSA"). Plaintiff seeks, for himself and other similarly situated employees, unpaid wages, unpaid overtime, liquidated damages, reasonable attorneys' fees and costs, and all other appropriate legal and equitable relief, pursuant to 29 U.S.C. §§216(b) and 217, and other applicable federal law.

4. Plaintiff also brings this action, on behalf of himself and other similarly situated employees, to remedy violations of New York State Labor Law, including New York Labor Law §§190 *et seq.*, §§650 et seq. (the "NYLL"), and 12 N.Y.C.R.R. §142-2.2. Plaintiff seeks, for himself and all other similarly situated employees, unpaid wages, unpaid overtime, spread-of-hours, pre- and post- judgment interest, reasonable attorneys' fees and costs, liquidated damages and other damages, and all other appropriate legal and equitable relief, pursuant to NYLL §§198, 663.

5. Plaintiff also brings this action, individually, for Defendants' violations of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.* ("ADEA"), Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), New York State Human Rights Law, New York Executive Law, §296 *et seq.* ("NYSHRL"), Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") and New York's Paid Family Leave Law ("PFL"), for which he seeks compensatory damages, interest, reasonable attorneys' fees and costs, liquidated damages and other damages, and all other appropriate legal and equitable relief.

**JURISDICTION AND VENUE**

6. Jurisdiction of this Court over Plaintiff's FLSA, ADEA, ADA and FMLA claims is invoked pursuant to 28 U.S.C. §1331.

7. Jurisdiction of this Court over Plaintiff's NYLL, NYSHRL and PFL claims is invoked pursuant to 28 U.S.C. §1367(a) as the claims are so related to Plaintiff's federal claims as to form the same case or controversy under Article III of the United States Constitution.

8. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the acts or events giving rise to the claims occurred within Eastern District and the residence of Defendants is within the Eastern District.

9. On or about April 12, 2019, Plaintiff filed his discrimination and retaliation claims with the Equal Employment Opportunity Commission ("EEOC").

10. On October 9, 2019, the EEOC issued Plaintiff his Notice of Right to Sue.

## PARTIES

11. Plaintiff is an individual who resides in the County of Suffolk, State of New York.

12. At all times herein mentioned, Plaintiff was employed by Defendants, where he worked as sales representative for Defendants from 2004 until February 2019.

13. As a sales representative, Plaintiff's principal activity involved locating potential vendors and/or exhibitors to lease space at the trade shows put on by Defendants.

14. Upon information and belief, Defendant American Consumer Shows LLC ("ACS") is a domestic corporation authorized to do business in the State of New York, with its principal place of business located in Syosset, New York.

15. ACS describes itself as a premier event management company in the home improvement, wedding, and flower and garden industries.

16. ACS's business consists of putting on trade shows, where it rents out space in a building and then sells booth spaces and sponsorships to exhibitors. These shows include home and garden shows, bridal shows, flower shows and others.

17. ACS does not sell any goods or services to the end user at the trade show, e.g., the consumer, as ACS's business is solely based on the space it sells to its customers, such as exhibitors, who want to sell their products or services at the trade shows.

18. At all relevant times mentioned herein, Defendant Craig Gitlitz ("Gitlitz") was an officer and the owner of ACS.

19. At all relevant times mentioned herein, Gitlitz had the power to hire, fire, and control the wages and working conditions of Plaintiff, the FLSA Collective Plaintiffs (as defined herein) and the Class Members (as defined herein).

20. Gitlitz had authority to, and did in fact, exercise operational control within ACS.

21. Gitlitz set the manner by which Plaintiff, the FLSA Collective Plaintiffs and the Class Members were to be paid while employed by ACS.

22. At all times relevant, Defendants were covered by the FLSA, NYLL, ADEA, ADA, FMLA, NYSHRL and PFL.

23. Defendants maintained a common policy and practice of, *inter alia*, not paying employees for all hours worked during their employment or otherwise notifying them of their rights under the law.

24. At all relevant times, Defendants affected commerce within the meaning of 29 U.S.C. §203(b) by producing goods for interstate commerce, or handling, selling, or working on goods or materials that have been moved in or produced for interstate commerce.

25. Upon information and belief, the gross annual volume of sales made or business done by Defendants was not less than $500,000.

26. At all relevant times, Defendants were Plaintiff's employers, as well as the employers of FLSA Collective Plaintiffs and the Class Members, within the meaning of the FLSA

and the NYLL.

## FACTUAL ALLEGATIONS

27. Plaintiff worked for Defendants from 2004 until February 2019.

### A. Collective/Class Allegations

28. During his employment, Plaintiff was paid solely commissions as his form of compensation from Defendants for the work he performed.

29. As part of his job, Plaintiff was to locate and sell to exhibitors the booth spaces and sponsorships in the buildings rented out by ACS.

30. To perform his duties, Plaintiff was to use both "inbound" and "outbound" leads to locate potential exhibitors for ACS's shows.

31. Inbound leads were generally from individuals or businesses calling into ACS demonstrating their interest to exhibit at a show.

32. Inbound leads were based on call-ins, internet leads, postcard leads, email blasts or other unsolicited leads.

33. To obtain inbound leads, salespeople were put on ACS's "wheel," which was a system that allowed those on the "wheel" to obtain an inbound lead.

34. Once one salesperson received an inbound lead on the wheel, it would go to the next salesperson on the wheel, and so on.

35. If a salesperson sold an inbound lead to an exhibitor, the salesperson received a ten percent (10%) commission on ACS's contract with the exhibitor.

36. As well, the salesperson would receive a residual commission for the life of that exhibitor doing business with ACS.

37. Outbound leads were based off of a salesperson's solicitation efforts, such as cold-calling, looking for potential exhibitors on the internet, looking at potential exhibitors that demonstrated a prior interest in a show but did not follow-up, or finding exhibitors from competitor shows (a/k/a "comp shows").

38. If a salesperson sold an outbound lead to an exhibitor, the salesperson received a fifteen percent (15%) commission on ACS's contract with the exhibitors, as well as residuals in the same manner as an inbound lead for the life of that exhibitor doing business with ACS.

39. ACS also provided salespeople an incentive to find and recruit sales employees for ACS.

40. If the recruit was hired, ACS paid the salesperson three percent (3%) of the recruit's sales.

41. From 2004 until 2016, Plaintiff was paid on a one hundred percent (100%) commission basis as his compensation from Defendants.

42. During his employment, Plaintiff worked excessive hours to meet Defendants' demands.

43. Plaintiff worked Mondays through Fridays, form 7:30 a.m. until 5:30 p.m., and Saturdays from 9:00 a.m. until 2:00 p.m.

44. Defendants failed to provide notice to Plaintiff or other employees regarding their rights under the FLSA or the NYLL.

45. On the grounds of equitable tolling, the statute of limitations for all claims asserted by Plaintiff and the putative class members should be tolled due to the failure to provide appropriate and required notice of the law.

**B. <u>Individual Allegations</u>**

46. Plaintiff was rarely allowed to work or attend the ACS shows, despite being the highest producing salesperson for the company.

47. Instead, Gitlitz would direct Plaintiff to attend “comp shows” each weekend.

48. Comp shows were trade shows that ACS’s competitors would host.

49. Gitlitz would direct Plaintiff to attend the comp shows to try and solicit from the exhibitors at these comp shows to sell into ACS shows.

50. Plaintiff frequently had to attend comp shows out of state, sometimes lasting all weekend.

51. When attending the comp shows, Plaintiff did not receive any compensation for the work he was required to perform.

52. In October 2016, Gitlitz told me that he can no longer afford to pay Plaintiff at his commission rate because business was bad.

53. Gitlitz made this statement in spite of the fact that ACS was continuing to grow.

54. Gitlitz felt it was appropriate to reduce Plaintiff’s commissions so that he could hire additional younger employees and/or pay his current employees more money.

55. No other sales representatives had their pay cut.

56. As a result, Defendants cut Plaintiff’s commission rate by two-thirds on his account renewals, commencing on October 7, 2016, which constituted a substantial reduction in his wages.

57. Critically, at no time before or after this change was Plaintiff provided a written agreement as to how his commissions were calculated or earned.

58. When this occurred, Plaintiff was the second oldest employee at ACS.

59. Although Plaintiff complained about the reduction, Gitlitz advised that his mind would not be changed.

60. The commission reduction only was applied to Plaintiff, which made no sense given Gitlitz's stated reason for reducing commissions due to business being bad.

61. ACS also stopped paying Plaintiff on the recruits he brought into the company.

62. At the time, Plaintiff had about one thousand two hundred (1,200) accounts with two sales assistants.

63. Instead of Gitlitz paying them as employees through ACS, he was using Plaintiff's wages to pay others within ACS with Plaintiff's commission money.

64. Due to Plaintiff's need to maintain a livelihood in the only business he knew for over twelve years, he had no choice but to continue working under these terms, despite his objection to the reduction.

65. Then again, in January 2018, Gitlitz unilaterally reduced Plaintiff's commission again, reducing it to twenty percent of what Plaintiff brought into ACS.

66. Just as in October 2016, this reduction only was applied to Plaintiff, one of the oldest employees in ACS.

67. Again, just as the last reduction, no writing was provided to Plaintiff from Defendants advising, *inter alia*, how his commissions were going to be calculated or when they were earned.

68. Plaintiff, again, complained of the unilateral reduction, but to no avail.

69. Notably, from October 2016 until January 2018, when ACS sent out its weekly sales contest winners, Plaintiff always finished at or near the top of all salespeople within ACS for bringing in new clients.

70. Yet, from 2016 onward, Gitlitz would start making comments to Plaintiff alluding to his age, such as "when are you retiring?"

71. After Plaintiff told Gitlitz he had no intention of retiring, Gitlitz took the actions, such as those set forth above, to try and get Plaintiff to quit his employment or fail.

72. As a result of ACS's illegal activity, on November 30, 2018, Plaintiff, through counsel, filed an internal complaint of misclassification and discrimination with ACS.

73. However, no proper investigation of Plaintiff's complaint was ever conducted by ACS.

74. On December 19, 2018, Plaintiff's wife was diagnosed with breast cancer.

75. Plaintiff's wife had surgery on January 23, 2019.

76. Although ACS was made aware of Plaintiff's wife's diagnosis and serious health condition, at no time was Plaintiff ever provided with paperwork regarding his rights under the FMLA or PFL.

77. On February 4, 2019, without any prior discipline whatsoever, Plaintiff was placed on a performance improvement plan (the "PIP").

78. The PIP set entirely unrealistic expectations by requiring Plaintiff to make three outbound sales a week, which is a task that no salesperson in the company could accomplish.

79. No other employees were placed on a PIP, despite the issues cited in Plaintiff's PIP having not been met by most, if not all, of ACS's employees.

80. About one week later, on February 14, 2019, Gitlitz called and terminated Plaintiff.

81. Gitlitz terminated Plaintiff on Valentine's Day, a day Plaintiff should have been at peace to be with his ailing wife, and two (2) weeks before Plaintiff's sixty-fifth birthday.

82. The reasons Gitlitz stated for Plaintiff's termination were that: (a) he did not make three outbound sales the prior week; (b) his cell phone was out on a chair next to his desk; and (c) he was found on Facebook for a company Designs by Lee.

83. When Plaintiff was on Facebook for Designs by Lee, it was for the purpose of finding outbound leads to meet his newly imposed quota as the company seemed to be a good fit for an upcoming ACS show.

84. Yet, Gitlitz made it impossible for Plaintiff to meet his quota by claiming that he was no longer able to solicit potential exhibitors on Facebook or anywhere on the internet

85. Previously, the internet was a major source for Plaintiff finding outbound leads since he started his employment with ACS.

86. As well, it was nonsensical for Plaintiff to be terminated for having my cell phone out because ACS places the cell phone numbers of its salespeople on their business cards so that they could perform the functions of their job.

87. In other words, the PIP was nothing but a convoluted document that ACS thought it could rely on to support that Plaintiff was terminated for a legitimate reason when there was no valid basis for terminating him at all.

88. Upon information and belief, since Plaintiff's termination, there have been other ACS employees who remain employed, without any discipline whatsoever, despite their: (a) not obtaining three outbound leads per week; (b) having their cell phones out; and (c) being on Facebook or the internet to locate potential exhibitors.

89. Gitlitz has even gone so far as to direct ACS employees to not make any contact with Plaintiff whatsoever.

## COLLECTIVE ACTION ALLEGATIONS

90. Plaintiff brings Counts One and Two as a collective action pursuant to Section 216(b) of the FLSA, on behalf of himself and others similarly situated, which shall include:

> All persons who work or worked for Defendants as sales representatives from three (3) years prior to the filing of the original Complaint in this action through the date of final judgment in this matter who elect to opt-into this action (the "FLSA Collective Plaintiffs").

91. At all relevant times, Plaintiff and the FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements, job duties and pay provisions, and are and have been subject to Defendants' decision, policy, plan, practice, procedure, routine, and rules to willfully fail and refuse to pay them the legally required minimum wage and overtime wage for all hours worked.

92. Other similarly situated employees to Plaintiff who were or are employed by Defendants should have the opportunity to have their claims for violations of the FLSA heard. Certifying this action as a collective action under the FLSA will provide other auto body technicians who worked for Defendants to receive notice of the action and allow them to opt-in to such an action if they so choose.

93. Count One is properly brought under and maintained as an opt-in collective action pursuant to Section 216(b) of the FLSA. The FLSA Collective Plaintiffs are readily ascertainable from records that Defendants are required by law to maintain. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Section 216(b) of the FLSA.

## RULE 23 CLASS ALLEGATIONS

94. Plaintiff brings Counts Three, Four, Five, and Six as a class action pursuant to Rule

23 of the Federal Rules of Civil Procedure on behalf of a class (the "Class Members") consisting of:

> All persons who work or worked for Defendants as sales representatives from six (6) years prior to the filing of the original Complaint in this action through the date of final judgment in this matter (the "Class Period").

95. The Class Members identified above are so numerous that joinder of all members is impracticable. Although the precise number of such employees is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are believed to be at least forty (40) Class Members during the Class Period. There are questions of law and fact common to the Class Members that predominate over any questions affecting only individual members. The claims of Plaintiff are typical of the claims of the Class Members.

96. Plaintiff will fairly and adequately protect the interests of the Class Members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against defendants.

97. There are questions of law and fact common to the Class Members which predominate over any questions solely affecting individual Class Members, including whether Defendants failed to pay Plaintiff and Class Members minimum and overtime wages for all hours worked.

## COUNT ONE
### (Failure to Pay Minimum Wages – FLSA, Brought by Plaintiff on Behalf of Himself and the FLSA Collective Plaintiffs)

98. Plaintiffs, on behalf of himself and the FLSA Collective Plaintiffs, reallege and

incorporate by reference all allegations in all preceding paragraphs.

99. Defendants engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

100. Defendants were required to pay directly to Plaintiffs and the FLSA Collective Plaintiffs at least the applicable minimum wage rates for all hours worked.

101. Defendants failed to pay Plaintiff and the FLSA Collective Plaintiffs the minimum wages to which they are entitled under the FLSA.

102. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

103. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

104. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective Plaintiffs.

105. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

106. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective Plaintiffs have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT TWO**
**(Failure to Pay Overtime Wages – FLSA, Brought by Plaintiff on Behalf of Himself and the FLSA Collective Plaintiffs)**

107. Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, reallege and

incorporate by reference all allegations in all preceding paragraphs.

108. Defendants were required to pay directly to Plaintiffs and the FLSA Collective Plaintiffs the applicable overtime wage rates for all hours worked in excess of forty (40) hours per workweek.

109. Defendants failed to pay Plaintiffs and the FLSA Collective Plaintiffs the overtime wages to which they are entitled under the FLSA.

110. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.

111. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

112. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the FLSA Collective Plaintiffs.

113. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

114. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective Plaintiffs have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT THREE**
**(Failure to Pay Gap and/or Minimum Wages – NYLL, Brought by Plaintiff on Behalf of Himself and the Class Members)**

115. Plaintiff, on behalf of himself and the Class Members, reallege and incorporate by reference all allegations in all preceding paragraphs.

116. Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

117. At all times relevant, Plaintiff and Class Members have been employees of Defendants, and Defendants have been employers of Plaintiff and the Class Members within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

118. At all times relevant, Plaintiff and the Class Members have been covered by the NYLL.

119. Defendants have failed to pay Plaintiff and the Class Members the gap time and/or minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

120. Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff and the Class Members the full minimum wage at a rate of (a) $7.25 per hour for all hours worked from July 24, 2009 through the December 30, 2013; (b) $8.00 per hour for all hours worked from December 31, 2013 to December 30, 2014; (c) $8.75 per hour for all hours worked from December 31, 2014 to December 30, 2015; (d) $9.00 per hour for all hours worked from December 31, 2015 to December 30, 2016; (e) $10.00 per hour for all hours worked from December 31, 2016 to December 30, 2017; (f) $11.00 per hour for all hours worked from December 31, 2017 to December 30, 2018; and (g) $12.00 per hour from December 31, 2018 to the present, under the NYLL §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

121. Through their knowing or intentional failure to pay gap time and/or minimum

hourly wages to Plaintiff and the Class Members, Defendants willfully violated the NYLL, Article 19, §§650 *et seq.*, and the supporting New York State Department of Labor Regulations.

122. Due to Defendants' willful violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT FOUR**
**(Failure to Pay Overtime Wages – NYLL, Brought by Plaintiff on Behalf of Himself and the Class Members)**

123. Plaintiff, on behalf of himself and the Class Members, realleges and incorporates by reference all allegations in all preceding paragraphs.

124. Defendants failed to pay Plaintiff and the Class Members the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

125. Defendants failed to pay Plaintiff and the Class Members one-and-one- half times the full minimum wage for all work in excess of forty (40) hours per workweek.

126. Through their knowing or intentional failure to pay Plaintiff and the Class Members overtime wages for hours worked in excess of forty (40) hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations. *See also*, *Karic v. Major Auto. Companies Inc.*, 992 F. Supp. 2d 196 (E.D.N.Y. 2014) (commission sales representatives entitled to overtime pay pursuant to NYLL).

127. Due to Defendants' willful violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime wages, liquidated damages

as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT FIVE**
**(Wage Notice Violations– NYLL, Brought by Plaintiff on Behalf of Himself and the Class Members)**

128. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

129. Defendants failed to furnish Plaintiff and the Class Members with wage notices as required by NYLL §195(1), in English or in the language identified by each employee as their primary language, at the time of hiring and with any change in pay, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary

130. Due to Defendants' violations of NYLL §195(1), Plaintiff and the Class Members are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs and the Class Members with proper wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL §198(1-b).

131. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

**COUNT SIX**
**(Wage Statement Violations– NYLL, Brought by Plaintiff on Behalf of Himself and the Class Members)**

132. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

133. Defendants failed to furnish Plaintiff and the Class Members with a statement with every payment of wages as required by NYLL §195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

134. Due to Defendants' violations of NYLL §195(3), Plaintiffs and the Class Members are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs and the Class Members with proper wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL §198(1-d).

**COUNT EIGHT**
**(Failure to Pay Commissions – NYLL)**

135. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

136. Pursuant to NYLL §191-b(1), "[w]hen a principal contracts with a sales representative to solicit wholesale orders within this state, the contract shall be in writing and shall set forth the method by which the commission is to be computed and paid."

137. Pursuant to NYLL §191-b(2), "[t]he principal shall provide each sales

representative with a signed copy of the contract. The principal shall obtain a signed receipt for the contract from each sales representative."

138. Pursuant to NYLL §191-b(3), "[a] sales representative during the course of the contract, shall be paid the earned commission and all other monies earned or payable in accordance with the agreed terms of the contract, but not later than five business days after the commission has become earned."

139. Pursuant to NYLL §191-c(1), "[w]hen a contract between a principal and a sales representative is terminated, all earned commissions shall be paid within five business days after termination or within five business days after they become due in the case of earned commissions not due when the contract is terminated."

140. Pursuant to NYLL §191-c(3), "[a] principal who fails to comply with the provisions of this section concerning timely payment of all earned commissions shall be liable to the sales representative in a civil action for double damages. The prevailing party in any such action shall be entitled to an award of reasonable attorney's fees, court costs, and disbursements."

141. At all relevant times hereto, Plaintiff was a "sales representative" within the meaning of the NYLL.

142. At all times relevant hereto, Defendants were Plaintiff's "employers" and "principals" within the meaning of NYLL.

143. Pursuant to the NYLL, Defendants were required to provide Plaintiff with a written agreement setting forth, *inter alia*, how and when his commissions were earned.

144. Defendants failed to provide such a written contract to Plaintiff.

145. Instead, Defendants orally unilaterally reduced Plaintiff's commissions during his employment, as set forth herein.

146. Defendants' failure to provide Plaintiff with a written agreement constitutes a violation of the NYLL.

147. Based on the foregoing, and pursuant to the NYLL, Plaintiff seeks damages against Defendants, jointly and severally, for unpaid commissions, liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT NINE
## (Retaliation – NYLL)

148. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

149. Pursuant to NYLL § 215(1)(a), "[n]o employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company shall discharge, penalize, or in any other manner discriminate or retaliate against any employee because (i) because such employee has made a complaint to his or her employer…that the employer has violated any provision of this chapter…"

150. Defendants violated the NYLL by terminating Plaintiff's employment after he raised issues about Defendants' improper pay practices by unilaterally reducing his commissions.

151. As a direct and proximate consequence of Defendants' intentional, unlawful, and discriminatory employment policies and practices, Plaintiff has suffered and continues to suffer monetary damages, including, but not limited to, a loss of income, including past salary and future salary.

152. As a direct and proximate consequence of Defendants' intentional, unlawful, and continues to suffer, non-monetary damages including, but not limited to, humiliation and mental and physical pain and suffering.

153. By the foregoing reasons, Plaintiff seeks equitable relief as may be appropriate to serve the purposes of the anti-retaliation provision, including but not limited to an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

**COUNT TEN**
**(Discrimination in Violation of the ADEA)**

154. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

155. Defendants violated the ADEA when they terminated Plaintiff's employment because of his age.

156. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights.

157. As a result of Defendants unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT ELEVEN**
**(Retaliation in Violation of the ADEA)**

158. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

159. Plaintiff participated in protected activities under the ADEA by, among other things, complaining to Defendants that he believed they were discriminating against him based on his age.

160. By terminating Plaintiff's employment after filing his complaint, Defendants unlawfully retaliated against Plaintiff in violation of the ADEA.

161. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

162. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT TWELVE**
**(Failure to Reasonably Accommodate in Violation of the ADA)**

163. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

164. Plaintiff's wife's conditions as described in this Complaint, including her cancer, constitute a disability within the meaning of the ADA.

165. Plaintiff's wife's disabilities, when active, substantially limit the operation of her major bodily functions, including functions of the immune system, reproductive system, and normal cell growth.

166. Plaintiff's wife's disabilities, when active, substantially limit Plaintiff's abilities not only to work, but to eat, sleep, engage in sexual relations, reproduce, think, and concentrate.

167. Defendants knew of Plaintiff's wife's disabilities, regarded Plaintiff's wife as disabled, and had a record of Plaintiff's wife's disabilities.

168. Plaintiff was discriminated against on the basis of being associated with a person with disabilities.

169. With a reasonable accommodation that would have placed no undue hardship on Defendants, Plaintiff could have performed the essential functions of his position.

170. Defendants violated the ADA by failing to accommodate Plaintiff's wife's disabilities or even engaging in the interactive process with Plaintiff.

171. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights.

172. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT THIRTEEN**
**(Discrimination in Violation of the ADA)**

173. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

174. Defendants violated the ADA when they terminated Plaintiff's employment because of his wife's disabilities.

175. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's federally protected rights.

176. As a result of Defendants unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT FOURTEEN**
**(Retaliation in Violation of the ADA)**

177. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

178. Plaintiff participated in protected activities under the ADA by, among other things, requesting a reasonable accommodation and complaining of continued harassment.

179. By increasing the demands upon Plaintiff after he made his accommodation

requests and ultimately terminating Plaintiff's employment, Defendants unlawfully retaliated against Plaintiff in violation of the ADA.

180. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

181. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT FIFTEEN**
**(Failure to Reasonably Accommodate in Violation of the NYSHRL)**

182. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

183. Plaintiff's wife's conditions as described in this Complaint, including her cancer, constitute a disability within the meaning of the NYSHRL.

184. Defendants violated the NYSHRL by failing to accommodate Plaintiff's wife's disabilities or even engaging in the interactive process with Plaintiff.

185. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

186. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT SIXTEEN**
**(Discrimination in Violation of the NYSHRL)**

187. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully

set forth herein.

188. Defendants violated the NYSHRL when they terminated Plaintiff's employment because of his age and/or his wife's disabilities.

189. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

190. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT SEVENTEEN**
**(Retaliation in Violation of the NYSHRL)**

191. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

192. Plaintiff participated in protected activities under the NYSHRL by, among other things, requesting a reasonable accommodation and complaining of continued harassment.

193. By increasing the demands upon Plaintiff after he made his accommodation requests and ultimately terminating Plaintiff's employment, Defendants unlawfully retaliated against Plaintiff in violation of the NYSHRL.

194. Defendants acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

195. As a result of Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**COUNT EIGHTEEN**
**(Aiding and Abetting Discrimination in Violation of the NYSHRL)**

196. Plaintiff realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

197. As a result of the aforementioned actions, Gitlitz discriminated against Plaintiff on account of his age and/or association with a person with disabilities with respect to the terms, conditions and privileges of his employment in violation of the NYSHRL.

198. Gitlitz violated the NYSHRL by aiding, abetting, inciting and coercing the unlawful discrimination set forth in this Complaint.

199. Gitlitz acted intentionally and with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

200. As a result of the Gitlitz unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

**JURY DEMAND**

201. Plaintiff, on behalf of himself, the FLSA Collective Plaintiffs, and the Class Members, demands a trial by jury on all causes of action and claims with respect to which they have a right to a jury trial.

**BCL §630 / LLCL §609 NOTICE AND DEMAND**

202. Pursuant to New York Business Corporation Law ("BCL") §630 and/or New York Limited Liability Company Law ("LLCL") §609, Plaintiff hereby advises that it intends to hold its top ten shareholders and/or members liable for the unpaid wages referenced herein. Further, Plaintiff demands that ACS permit an examination of its record of shareholders under BCL §624

so that liability may be imposed on its top ten shareholders for the unpaid wages referenced herein.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, and behalf of himself, the FLSA Collective Plaintiffs, and the Class Members, prays for relief as follows:

A. Designation of this action as a collective action on behalf of the FLSA Collective Plaintiffs and authorizing prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all FLSA Collective Plaintiffs, apprising them of the pendency of this action, and permitting them promptly to file consents to be plaintiffs in the FLSA claims in this action;

B. Certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure for applicable claims under the NYLL;

C. Awarding Plaintiff, similarly situated co-workers and putative class members damages for the amount of unpaid wages under the FLSA and/or the NYLL, including minimum wages, overtime wages and spread-of-hours;

D. Awarding Plaintiff, similarly situated co-workers and putative class members liquidated damages in an amount equal to wages owed pursuant to 29 U.S.C. §216(b) and liquidated damages and other statutory remedies pursuant to the NYLL;

E. Awarding Plaintiff, compensatory damages, liquidated damages, interest, attorneys' fees and costs for his wage claims under state law;

F. Awarding Plaintiff back pay, front pay, compensatory damages, liquidated damages, interest, attorneys' fees and costs for his discrimination and retaliation claims under federal and state law;

G. Awarding pre- and post-judgment interest as permitted under the law;

H. Awarding the costs of this action together with reasonable attorneys' fees; and

I. Granting such other and further relief as this Court deems necessary and proper.

Dated: October 17, 2019
Syosset, New York

Respectfully submitted,
**LAW OFFICES OF YALE POLLACK, P.C.**

By: */s/ Yale Pollack*
Yale Pollack, Esq.
*Attorneys for Plaintiff, the FLSA Collective Plaintiffs and the Class Members*
66 Split Rock Road
Syosset, New York 11791
(516) 634-6340 Phone
(516) 634-6341 Fax
ypollack@yalepollacklaw.com